**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**BRANDON TAYLOR,**

                               **Plaintiff,**

               v.                                 **3:18-CV-1201**
                                                              **(FJS/ML)**

**MEDTRONIC, INC.; MEDTRONIC, USA;**
**COVIDIEN HOLDING INC.; COVIDIEN,**
**INC.; and COVIDIEN, LP,**

                            **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **RONALD P. HART, P.C.** | **RONALD P. HART, ESQ.** |
| 225 Broadway, Suite 2815 | |
| New York, New York 10007 | |
| Attorneys for Plaintiff | |
| | |
| **DLA PIPER LLP** | **JEFFREY D. KUHN, ESQ.** |
| 677 Broadway – Suite 1205 | |
| Albany, New York 12207 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Brandon Taylor ("Plaintiff") brings this action against Defendants Medtronic, Inc.,

Medtronic, U.S.A., Covidien Holding Inc., Covidien, Inc., and Covidien, LP[1] ("Defendants")

---

[1] The parties dispute whether there is a comma in Defendant Covidien[,] LP's name. *See* Dkt. No. 10, Def's Memorandum in Opposition, at 4 n.1; Dkt. No. 10-1, Decl. of Jeffery Kuhn, Esq., at n.1; Dkt. No. 11-3, Pl.'s Reply in Support of Mot. Remand, at 2. When referencing the allegedly incorrect punctuation, Defendants state that they do not concede that they are proper parties in this case. *See id.* The Court uses the comma throughout this Memorandum-Decision

seeking compensatory damages, punitive damages, attorney's fees, and costs for injuries he sustained from a mesh implant that was used during surgery to repair his inguinal hernia. *See generally* Dkt. No. 2, Compl. Plaintiff has moved to remand this case to state court, *see* Dkt. No. 8; and Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 9.

## II. BACKGROUND

Plaintiff, a resident of Broome County, New York, alleges that he was injured from the Parietex ProGrip mesh used during surgery to repair his inguinal hernia on September 23, 2015. *See* Dkt. No. 2 at ¶¶ 3-6. Plaintiff argues that Defendant Medtronic Corporation and/or its subsidiary, Covidien, manufactured, designed, distributed, marketed, and sold in the marketplace the Parietex ProGrip mesh to medical providers, including United Health Services Wilson Medical Center, where Plaintiff's surgery was performed. *See id.*

Plaintiff filed his complaint on September 14, 2018, in the Supreme Court of the State of New York, Broome County. *See generally id.* In his complaint, Plaintiff alleged four causes of action based on strict liability—failure to warn, design defect, manufacturing defect, and negligence—and two causes of action for breach of express warranty and breach of implied warranties. *See generally id.*

On October 9, 2018, Defendants Medtronic, Inc., Medtronic USA, Inc., Covidien Holding, Inc., and Covidien, Inc. filed a Notice of Removal from New York Supreme Court to this District pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* Dkt. No. 1, Notice of Removal, at 1. Notably, Defendant Covidien, LP did not join in the removal because, according

---

and Order (referring to the party as "Defendant Covidien, LP") because it is included in the caption of the complaint.

to defense counsel, it had not been served, and its consent for removal was not required.[2]  *See id.* at n.1 (citing 28 U.S.C. § 1446(b)(2)(A)).  On November 8, 2018, Plaintiff filed the pending motion to remand this case to state court.  *See* Dkt. No. 8.  In response, Defendants filed the pending motion to dismiss.  *See* Dkt. No. 9.

## III. DISCUSSION

### A.  Plaintiff's motion to remand

Plaintiff relies on three main theories to support his motion requesting that the Court remand this case.  First, he argues that Defendants' Notice of Removal violated the "rule of unanimity."  Second, Plaintiff asserts that, upon review of the complaint, the amount in controversy is indeterminable.  Third, he claims that the Court does not have subject-matter jurisdiction over Defendant Covidien, LP.

#### 1.  *Rule of unanimity*

The procedure governing a defendant's removal of a civil action from state court to federal district court is set out in 28 U.S.C. § 1446.  Under that statute, notice of removal must be filed within thirty days after the defendant is served with a copy of the complaint.  *See* 28 U.S.C. § 1446(b).  In addition, the Second Circuit has recognized the "rule of unanimity," which requires that all defendants consent to removal within the statutory thirty-day period.  *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) (quotation omitted).  Plaintiff argues

---

[2] Defendants now concede that Defendant Covidien, LP was served pursuant to New York's Civil Practice Law and Rules, but defense counsel believed, in good faith, that it had not been served when he filed the Notice of Removal.  *See* Dkt. No. 10 at 4.  According to Defendants, Corporation Service Company, Defendant Covidien, LP's designated agent for service, mistakenly failed to forward the served summons and complaint because it was attached to the back of an identical summons and complaint for Defendant Covidien, Inc.  *See id.* at 5.

that the Court should remand this case to state court because Defendants allegedly violated the rule of unanimity when Covidien, LP, who was properly served, did not consent to removal. *See* Dkt. No. 8-2, Pl's Memorandum in Support, at 4.

District courts in this Circuit and other circuit courts have declined to strictly construe the rule of unanimity in situations, such as this one, in which one defendant did not consent in the Notice of Removal but consents to removal later by opposing the plaintiff's motion to remand.[3] Defendant Covidien, LP both opposed Plaintiff's remand motion and joined in Defendants' motion to dismiss. *See generally* Dkt. Nos. 9, 10. The caselaw makes clear that this constitutes consent to removal and functions to cure Defendants' failure to comply with the rule of unanimity.

---

[3] *See, e.g.*, *Doe v. Zucker*, No. 1:17-CV-1005 (GTS/CFH), 2018 WL 3520422, *5 (N.D.N.Y. July 20, 2018) (finding that the respondents' opposition to the petitioner's motion to remand independently expressed their consent to removal and satisfied the unanimity requirement); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 76-77 (1st Cir. 2009) (noting that, even though removal statutes are to be narrowly construed, the defendant's "technical defect" in failing to consent to removal was cured when it opposed plaintiff's remand motion, "thereby clearly communicating its desire to be in federal court" (citation omitted)); *Harraz v. EgyptAir Airlines Co.*, No. 18 Civ. 12364 (ER), 2019 WL 6700946, *7 (S.D.N.Y. Dec. 9, 2019) (holding that, "[b]ecause the Court has no doubts about the Defendants' consent, remanding this case on a technicality would disserve the judiciary's interest in efficiency, ignore the defendant's clearly expressed intent, and unnecessarily compromise their ability to litigate this case in a manner that is fair to all parties. Moreover, even if the Court were not convinced by the reasoning in *Esposito* [ ]*,* it still would not remand on the asserted procedural grounds, as any consent-related defect in the notice has been sufficiently cured by the Defendants' joint opposition to the present motion" (citations omitted)); *Crenshaw v. McNamara*, No. 6:15-CV-6229 (GTS), 2016 WL 228358, *2 (W.D.N.Y. Jan. 19, 2016) (holding that the defendants' letter to the court stating that it supported and joined the other defendants' motion to remove and opposed the plaintiff's motion to remand expressed the defendants' independent consent to removal (citations omitted)); *Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015) (per curiam) (holding that "[a] technical defect related to the unanimity requirement may be cured by opposing a motion to remand prior to the entry of summary judgment" (citing [*Esposito*, 590 F.3d at 77])).

Additionally, based on the email correspondence that defense counsel provided, it appears that his failure to ascertain Defendant Covidien, LP's consent for removal was an accident, as he believed in good faith that it had not been served. *See* Dkt. No. 10-2, Ex. 1. Defendants further contend that, had service been properly communicated, Defendant Covidien, LP would have instructed defense counsel to join the petition for removal. *See* Dkt. No. 10, Def's Memorandum in Opposition, at 5. The same counsel represents *all* Defendants in this matter, and thus it seems clear all Defendants want this case litigated in federal court. Therefore, based on the above-stated facts and caselaw, the Court finds that Defendant Covidien, LP's technical defect in failing to consent to removal was cured by its subsequent actions.[4]

### 2. *Amount in controversy*

A removed case must be remanded if, at any time before final judgment, it appears that the district court lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c). The Court has

---

[4] Plaintiff argues that Defendant Covidien, LP did not give consent until 17 days past the thirty-day deadline because Defendants' Opposition to Plaintiff's Remand Motion was filed on November 26, 2018. *See* Dkt. No. 11-3 at 3. However, the remaining Defendants consented in the Notice of Removal within the time limit; and, because Defendant Covidien, LP cured the defect in the rule of unanimity by opposing Plaintiff's remand motion, it does not matter that its consent was not given until the opposition was filed.

Furthermore, Plaintiff argues that Defendant Covidien, LP *should have* consented to removal in writing. Some courts require that all defendants submit explicit written notice of their consent to removal, while others allow defendants who were not listed in the notice of removal to submit something short of individual written consent. *See Harraz*, 2019 WL 6700946, at *6 (citations omitted). The Second Circuit "has typically fallen somewhere between those two ends. Notably, the Second Circuit has explicitly avoided 'advising what form consent to removal *must* take,' instead providing the limited guidance that defendants must 'independently express their consent to removal.'" *Id.* (quoting Pietrangelo, 686 F.3d at 66 (emphasis added)). Thus, it is insignificant that Defendant Covidien, LP or the other Defendants did not provide written consent prior to the removal of the action from state to federal court. Defendant Covidien, LP's joining in Defendants' opposition to Plaintiff's remand motion is sufficient to show its independent consent.

subject-matter jurisdiction based on diversity of citizenship so long as the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

Regarding the amount in controversy requirement, "if the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994) (citation omitted). Defendants, as the removing party, bear the burden of proving "'that it [would] appear to "a reasonable possibility"'" that the amount in controversy exceeds the $75,000 jurisdictional threshold mandated by 28 U.S.C. § 1332(a)." *Duncan v. Crawford*, No. 16 CV 4699 (PKC)(JO), 2016 WL 4919891, *1 (E.D.N.Y. Sept. 14, 2016) (quotation omitted). To prove this "reasonable possibility" standard, Defendants' Notice of Removal must be specific.[5]

Here, Defendants assert in their Notice of Removal that Plaintiff's allegations are particularized in that he alleges "constant pains," "lump in lower right abdomen," "significant weight loss," "worsening lower back pain," "trauma to [his] abdomen and thereafter severe emotional distress," "extreme pain and discomfort," and "superior mesenteric artery syndrome," and that he "will likely undergo further medical treatment and procedures" as a result of his hernia repair surgery and implanted mesh. *See* Dkt. No. 1 at ¶ 9 (citing Dkt. No. 2 at ¶¶ 6, 51, 95, 128, 147). Furthermore, Defendants note that Plaintiff seeks damages including medical

---

[5] Courts have held that it is not enough for defendants to meet the "reasonable possibility" standard by asserting in a notice of removal that "the amount-in-controversy is likely met because Plaintiff's complaint alleges that he was 'rendered sick, sore, lame and disabled; was caused to suffer great pain; was internally and externally injured; and will continue to endure great pain and suffering as well as unspecified damages.'" *Whitter v. Waizenegger*, No. 19 Civ. 283 (AT), 2019 WL 6210848, *1 (S.D.N.Y. Nov. 21, 2019) (quotation omitted).

expenses, hospitalization expenses, lost income, physical and mental pain, and other economic

and non-economic damages, including punitive damages. *See id.* The Court finds that these

examples of Plaintiff's specific injuries, taken from the complaint and listed in the Notice of

Removal, allow it to infer to "a reasonable possibility" that the amount in controversy exceeds

$75,000.

### 3. *Diversity of citizenship*

In Plaintiff's reply, he first raises the argument that Defendant Covidien, LP is a limited

partnership, not a corporation; and, thus, the Court only has subject-matter jurisdiction if there

is complete diversity between all partners – general and limited – and Plaintiff. *See* Dkt. No.

11-3, Pl's Reply, at 5-7. Plaintiff argues that Defendants have not offered one scintilla of

evidence concerning the identities of Defendant Covidien, LP's general and/or limited partners,

and Plaintiff has been unable to ascertain the citizenship of those partners. *See id.* at 6. Instead

of identifying those partners, Plaintiff asserts, Defendants have improperly stated that

Defendant Covidien, LP's principal place of business is Massachusetts and its place of

incorporation is Delaware. *See id.*

Defendants filed a letter response to Plaintiff's reply, including an affidavit and sur-

reply, which indicated that Plaintiff did not raise this specific argument anywhere in his initial

memorandum of law. *See* Dkt. No. 12, Defs' Sur-Reply, at 1. Defendants respectfully

requested that the Court either disregard the new issue that Plaintiff impermissibly raised on

reply or accept Defendants' affidavit and sur-reply addressing the new issue. *See id.*

Plaintiff is, however, permitted to raise the issue of subject-matter jurisdiction at any

time. *See, e.g.*, *Cayuga Indian Nation v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 192

(N.D.N.Y. 2003) (citation omitted). Thus, the Court will consider this issue, together with Defendants' affidavit and sur-reply.

Plaintiff correctly states that, for purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990)). This means that Plaintiff must have a different place of citizenship from both Defendant Covidien, LP's general *and* limited partners.

Defendants provide an affidavit from Andrea Mitlyng, a Principal Paralegal Specialist in Subsidiaries & Governance for Defendant Medtronic, Inc. *See* Dkt. No. 12-1, Aff. of Mitlyng. Ms. Mitlyng indicates that Defendant Covidien, LP is a limited partnership, organized and existing under the laws of the State of Delaware with its principal place of business located in Delaware. *See id.* at ¶ 4. Furthermore, Defendant Covidien Holding, Inc. is a general partner of Defendant Covidien, LP and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Massachusetts. *See id.* at ¶ 5. Ms. Mitlyng also attests that Defendant Covidien, LP has eleven limited partners, all of which are businesses that are not incorporated nor have their principal places of business in New York. *See id.* at ¶¶5(a)-(k). Thus, because none of Defendant Covidien, LP's general or limited partners are citizens of New York, the Court finds that there is complete diversity of citizenship.

## B. Defendants' motion to dismiss

### 1. Legal standard

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network*

*Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

### 2. *Strict liability*

In New York, a plaintiff may assert a cause of action for strict products liability if a product is defective because of a mistake in the manufacturing process, an improper design, or if the manufacturer failed to provide adequate warnings regarding the use of the product. *See Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106-07 (1983) (citations omitted). Under New York law, "'where the theory of liability is failure to warn, negligence and strict liability

are equivalent, . . . and a plaintiff may allege both.  *See, e.g.*, *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420 (S.D.N.Y. 2011) (quotation omitted).  The Court addresses each of these causes of action in turn.

### a.  Failure to warn

"'To state a *prima facie* case of liability on the basis of a defendant's failure to warn, the plaintiff must establish that "(1) the manufacturer had a duty to warn; (2) the manufacturer breached the duty to warn in a manner that rendered the product defective, i.e., reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered loss or damage."'"  *Wickenden v. Saint-Gobain Performance Plastics Corp.*, No. 1:17-CV-1056 (LEK/DJS), 2018 WL 3069193, *6 (N.D.N.Y. June 21, 2018) (quoting [*Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 169-70 (W.D.N.Y. 2014)] (quoting *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 282-83 (E.D.N.Y. 2014))).

In *Hingos v. W.L. Gore & Assoc.*, a similar surgical mesh products liability case on which both parties frequently rely, the court noted that the plaintiff's proposed amended complaint claimed that the defendants

> "fail[ed] to warn users and medical providers as to the serious dangers which defendants knew or should have known were likely to result from use of said product," and "understated, downplayed, or withheld information concerning health hazards and risks associated with the product, as well as failing to put into place procedures such as adequate testing and monitoring for safety."

*Hingos v. W.L. Gore & Assoc.*, No. 3:16-CV-969 (NAM/DEP), 2017 WL 3309095, *6 (N.D.N.Y. Jan. 27, 2017) (quotation omitted).

The *Hingos* court remarked that the plaintiff did not "identify what warnings were given, how they were inadequate, what warnings should have been given, or how any failure to

warn caused plaintiff's injuries." *Id.* Thus, the court held that the cause of action as alleged was "insufficient to raise above the speculative level plaintiff's right to relief…" *Id.*

Like the plaintiff in *Hingos*, Plaintiff did not identify what warnings were given.[6] He generally claimed, "Defendants did not adequately warn end users and Plaintiff of the known dangers of the Product. This danger was reasonably foreseeable and well known to Defendants because of their knowledge of such defective products and would have been discoverable through reasonable inspection and analysis." *See* Dkt. No. 2 at ¶ 181. "Specifically," Plaintiff alleged, "Defendants did not provide sufficient or adequate warnings" regarding a long list of items, which included, among other things, the mesh's propensity to disintegrate inside the body, degrade, fragment, creep, erode, and lead to risk of chronic inflammation, infections, scarring, recurrent and intractable pain, and other pain. *See id.* at ¶ 183(a)-(t).

Furthermore, other than a conclusory statement that, had he known the dangers he would never have allowed the product to be used in his body, Plaintiff does not specifically identify how Defendants' failure to warn caused his injuries. *See id.* at ¶ 198. In fact, as Defendants point out, Plaintiff acknowledges in his complaint that his injuries are among "[t]he most common injuries caused by hernia surgeries using hernia mesh" as well as "known side effects" of using hernia mesh for reinforcement and strengthening of hernia repairs. *See id.* at ¶¶ 33, 35.

For these reasons, the Court finds that Plaintiff has not adequately pled a cause of action for strict liability based on failure to warn.

---

[6] In his Memorandum in Opposition to Defendants' motion to dismiss, Plaintiff included warning information from the product's packaging. The Court cannot consider this information at the motion to dismiss stage because it was not included in, referenced by, or attached to the complaint. *See, e.g.*, *Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that "a party is not entitled to amend its complaint through statements made in motion papers" (citations omitted)).

### b. Design defect

"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Voss*, 59 N.Y.2d at 107. A plaintiff's claim for design defect will fail if he does not allege a safer alternative design to the product. *See S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 (2d Cir. 2014) (Summary Order). Further, "a design-defect claim will not stand if the only alternative [pled in the complaint] is an outright ban." *Id.* (citations omitted).

In his complaint, Plaintiff alleges that "[s]afer and more effective alternatives to hernia mesh exist and have existed since the introduction of hernia mesh products into the market. These include the i. Shoudice Repair, ii. McVay Repair, iii, Bassini Repair, and iv. Desarda Repair." *See* Dkt. No. 2 at ¶ 38. As Defendants point out, these are not safer *mesh-related* alternatives; they are merely surgical techniques that do not involve the use of mesh at all. *See* Dkt. No. 9-1, Def's Memorandum in Support, at 12 n.13. Although Plaintiff argues in his Memorandum in Opposition that medical literature reveals that non-self-gripping mesh is superior to self-gripping mesh (such as the Parietex ProGrip mesh), he does not cite to this medical literature or the non-self-gripping mesh alternative in his complaint.[7] Therefore, the Court finds that Plaintiff's cause of action for design defect fails because he did not allege a safer mesh-related alternative in his complaint.

---

[7] As such, the Court cannot consider this evidence. *See, e.g.*, *Wright* 152 F.3d at 178.

Additionally, in the body of his complaint under the heading "Strict Product Liability Design Defect," Plaintiff alleges that the "Product's memory recoil ring was designed improperly which results in the compromising of the weld process which lead to disintegration and mis-shaping." *See* Dkt. No. 2 at ¶ 203. However, as Defendants point out, Parietex ProGrip mesh is not made with a memory recoil ring; and Plaintiff admits in his Memorandum in Opposition that this was a "typographical error" relating to different litigation. *See* Dkt. No. 9-1 at 12; Dkt. No. 14, Pl's Memorandum in Opposition, at 9. Plaintiff then alleges various other potential defects in the design of the Parietex ProGrip mesh, such as adverse tissue reactions caused by the material used, the propensity for the mesh to degrade or disintegrate, and that the mesh can cause pain upon normal daily activities that involve movement in the abdomen. *See* Dkt. No. 2 at ¶ 205(a)-(j). Nevertheless, Plaintiff does not assert that any of these alleged defects caused him injury.

Instead, Plaintiff conclusively alleges that "[a]s a direct and proximate result of the Product's" alleged defects he has "experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo future medical treatment and procedures…" *See id.* at ¶ 206. Thus, the Court finds that this claim also fails because Plaintiff did not plead any facts showing that there was a defect in the design of the Parietex ProGrip mesh implanted in his body, which, in turn, caused him harm.

### c. *Manufacturing defect*

"'To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of "some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used

in construction," and that the defect was the cause of plaintiff's injury.'" *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 890 (E.D.N.Y. 2018) (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001)) (other citations omitted). "'[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units.'" *Id.* (quoting *Colon ex rel. Molina*, 199 F. Supp. 2d at 85).

Plaintiff generally alleges in his complaint that "[t]he Product implanted in the Plaintiff was not reasonably safe for its intended use/purpose and was defective with respect to its manufacture, in that it deviated materially from Defendants' design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to the Plaintiff." *See* Dkt. No. 2 at ¶ 213. Plaintiff then repeats his statement that, due to these defects, he experienced significant mental and physical pain and suffering, sustained permanent injury, and has undergone medical treatment. *See id.* at ¶ 214. These generic and conclusory statements do not show how Plaintiff's specific Parietex ProGrip mesh implant was flawed or deviated in quality and performance from other mesh implants produced during the manufacturing process. As such, the Court finds that Plaintiff has not adequately pled this claim.

### d. *Negligence*

Where liability is predicated on a failure to warn, manufacturing defect, or design defect, New York views negligence and strict liability claims as "functionally synonymous." *See Oden*, 330 F. Supp. 3d at 887 (citations omitted); *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 416 (N.D.N.Y. 2012) (quotation omitted). Thus, for the same reasons that it finds that Plaintiff failed to sufficiently plead his claims based in strict liability, the Court finds that Plaintiff has failed to plead a cause of action for negligence.

### 3. Breach of express warranty

"Under New York law, '[a] successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty.'" *Hingos*, 2017 WL 3309095, at *6 (quoting *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012)); (citing U.C.C. § 2-313(1)(a)). There is no evidence in Plaintiff's complaint of an express warranty. He fails to identify any express statements Defendants made, when such statements were made, or to whom they were made. *See generally* Dkt. No. 2. Instead, Plaintiff vaguely refers to statements that the mesh was "completely safe and preferred to repair hernias" and that those statements were made to UHS Wilson Hospital in Johnson City before his surgery on September 23, 2015. *See* Dkt. No. 2 at ¶ 123; Dkt. No. 14 at 11. The Court finds that these vague allegations do not adequately allege a cause of action for breach of express warranty.

### 4. Breach of implied warranties

"In order for a plaintiff to plead a claim based upon breach of an implied warranty, the following elements must be alleged: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect was the proximate cause of the injury." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 745 (E.D.N.Y. 2016) (citing *Cavanaugh v. Ford Motor Co.*, No. 13-CV-4584, 2014 WL 2048571, at *5 (E.D.N.Y. May 19, 2014)). Furthermore, in order to succeed on an implied warranty claim, a plaintiff must submit evidence that the product is defective. *See Lewis v. Abbott Labs.*, No. 08 Civ. 7480 (SCR)(GAY), 2009 WL 2231701, *6 (S.D.N.Y. July 24, 2009) (citation omitted). If a plaintiff has not pled the necessary elements to

support a design, failure to warn, or manufacturing defect claim, then the plaintiff fails to allege an essential element of a breach of implied warranties claim. *See id.* Thus, because the Court found that Plaintiff did not adequately plead claims for strict liability based on failure to warn, design defect, and manufacturing defect, it further finds that Plaintiff has failed to allege a necessary element of his cause of action for breach of implied warranties.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to remand, *see* Dkt. No. 8, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss for failure to state a claim, *see* Dkt. No. 9, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: February 24, 2020
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge